**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Smith Enterprise, Inc., | ) No. CV 07-02163-PHX-EHC |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Capital City Firearms, | ) |
| Defendant. | ) |

Before the Court is Defendant Capital City Firearms' Motion to Dismiss (Dkt. 5) pursuant to Rules 12(b)(2) and (3), Federal Rules of Civil Procedure.  Plaintiff Smith Enterprise, Inc. filed a Response and Alternative Request to Permit Conducting Additional Jurisdictional Discovery (Dkt. 10).  Defendant filed a Reply (Dkt.13).  The Court finds this matter suitable for decision without oral argument.

**I.    Background**[1]

Plaintiff Smith Enterprise, Inc. is an Arizona corporation with its principal place of business in Tempe, Arizona. (Dkt. 1, ¶ 2).  Plaintiff manufactures and sells accessories and services for tactical and competition firearms, and has used the VORTEX trademark

---

[1]The following facts come from Plaintiff's Complaint (Dkt. 1) and Response (Dkt. 10), and are accepted as true for the purposes of this motion.

1  extensively in connection with the sale of these items, and with muzzle flash hiders.[2]  (Dkt.

2  1, ¶ 6).  Plaintiff has federal registration over the VORTEX trademark, and its VORTEX

3  flash hiders have become well-known in the industry.  (Dkt. 1, ¶ 7, 9).  Defendant Capital

4  City Firearms is a Virginia corporation with its principal place of business in Richmond,

5  Virginia.  (Dkt. 1, ¶ 3; Dkt. 10, ¶ 13).  Defendant sells tactical handguns and accessories via

6  the Internet to wholesale and retail customers.  (Dkt. 10, pg. 2).

7  In 1999, Plaintiff and Defendant entered into a license agreement whereby Plaintiff

8  authorized Defendant to purchase Plaintiff's VORTEX flash suppressors, and market the

9  flash suppressors to Defendant's customers. (Dkt. 10, pg. 2). From August 1999 to February

10  2002, Plaintiff sold several hundred flash suppressors to Defendant.  (Dkt. 10, pg. 2).  In

11  February 2002, Plaintiff and Defendant terminated their business relationship.  (Dkt. 10, pg.

12  2).  In October 2006, Plaintiff became aware that Defendant was marketing a flash hider

13  under the VORTEX trademark, or a mark that was allegedly similar to the VORTEX one.

14  (Dkt. 1, ¶ 11). On October 13, 2006, Plaintiff sent Defendant a cease and desist letter.  (Dkt.

15  1, ¶ 12).

16  Defendant, however, continued to sell flash hiders using the VORTEX mark on its

17  website[3], prompting Plaintiff's current lawsuit.  (Dkt. 1, ¶ 13).  In addition, Defendant has

18  advertised its flash suppressors in a nationally distributed magazine.  (Dkt. 10, pg. 3).  As a

19  result, Defendant has sold approximately 40 of its allegedly infringing flash suppressors to

20  Arizona residents.  (Dkt. 10, pg. 3).  Thus, personal jurisdiction is arguably present.

21  **II.    Discussion**

22  Pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, a complaint against a

23  defendant may be dismissed for lack of personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).

24  To overcome a Rule 12(b)(2) motion, a plaintiff must make a prima facie showing of

25  personal jurisdiction, and may present evidence beyond the allegations in the complaint.  See

26

27  [2] A muzzle flash hider eliminates the muzzle flash on a firearm.  (Dkt. 1).

28  [3] Defendant's website is alleged to be http://www.ccfa.com/FlashSuppressors.htm.

1   Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007).  A mere "bare bones" assertion

2   of minimum contacts without factual support will not satisfy a plaintiff's burden of proof.

3   Id.

4        In its Motion to Dismiss (Dkt. 5), Defendant contends that Plaintiff's complaint fails

5   to identify any injurious event occurring in Arizona, or any specific advertisement or

6   solicitation directed toward Arizona.  In particular, Defendant contends that all of its

7   products are sold under certain terms and conditions which state that their orders are binding

8   under Virginia Law.  In response, Plaintiff asserts that because Defendant operates a website

9   from which Arizona customers make purchases, personal jurisdiction over Defendant exists

10  in this Court.

11       **A.  Personal Jurisdiction**

12       The Court must first address whether Defendant is subject to personal jurisdiction in

13  Arizona.  Arizona's long-arm statute provides that an Arizona court may exercise personal

14  jurisdiction over an out-of-state defendant to the fullest extent constitutionally permissible.

15  See Ariz. R. Civ. P. 4.2(a); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir.

16  1997).  Therefore, so long as doing so would not violate due process, Defendant may be

17  subject to personal jurisdiction in this Court.  In order to be consistent with due process, a

18  court may only exercise personal jurisdiction over a nonresident defendant if that defendant

19  has certain minimum contacts with the forum state "such that the maintenance of the suit

20  does not offend 'traditional notions of fair play and substantial justice.'" SEC v. Ross, 504

21  F.3d 1130, 1138 (9th Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

22  (1945)).  In essence, the Due Process Clause of the United States Constitution protects the

23  out-of-state defendant from being subjected to suit in a forum in which he has no purposeful

24  or  meaningful contacts.  Burger King Corp. v. Rudcewicz, 471 U.S. 462, 471 (1985).  As

25  the Court in Burger King Corp. stated: "...the Due Process Clause 'gives a degree of

26  predictability to the legal system that allows potential defendants to structure their primary

27  conduct with some minimum assurance as to where that conduct will and will not render

28  them liable for suit.'" Id.

1    When determining whether Defendant had minimum contacts with the state of

2    Arizona such that it will be subject to personal jurisdiction in this Court, and such that this

3    personal jurisdiction will not violate the Due Process Clause, the Court must consider "the

4    relationship among the defendant, the forum, and the litigation..."  Shaffer v. Heitner, 433

5    U.S. 186, 205 (1977).  If this Court decides that Defendant's contacts with Arizona satisfy

6    the Due Process Clause, then the Court must determine whether to exercise general or

7    specific jurisdiction over Defendant – this will be based on the nature of Defendant's

8    contacts.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-415 nn.8-9

9    (1984).

10                          **1.  General Jurisdiction**

11    General jurisdiction exists only where a defendant's activities in Arizona are

12    continuous or systematic, even if the plaintiff's action has nothing to do with these activities.

13    See Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997).  Such is not the

14    case here.  Defendant, a Virginia corporation, has not engaged in continuous and systematic

15    relations with Arizona, and maintains its principal place of business in Virginia.  While

16    Defendant has at least 40 clients in Arizona, its dealings with these clients have not been

17    steady.  Defendant ships products to Arizona only when they are ordered, and these items

18    constitute only 2.75% of Defendant's total revenues.   (Dkt. 10, Exhibit 5).   All of

19    Defendant's sales transactions are delivered from Virginia.  Therefore, because the delivery

20    and consummation of orders in Arizona are not regular, systematic or substantial, this Court

21    cannot exercise general jurisdiction over Defendant.

22                          **2.  Specific Jurisdiction**

23    Because Defendant is not subject to general jurisdiction in Arizona, the Court must

24    determine whether Defendant has sufficient minimum contacts with Arizona, to give rise to

25    specific jurisdiction.  In the Ninth Circuit,  specific jurisdiction exists if: (1) the nonresident

26    defendant purposefully directs its activities, or consummates some transaction with the forum

27    state, such that it purposely avails itself of the privilege of conducting business in the forum

28    state; (2) the plaintiff's claim arises out of or relates to the defendant's activities in the forum;

and (3) the exercise of jurisdiction in the forum state is reasonable. See Int'l Shoe Co., 326 U.S. at 316; See Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).

### a. Purposeful Availment

When first discussing the specific jurisdiction test, the United States Supreme Court stated that it was essential that in each case, the defendant have some act by which he had purposely availed himself of the privilege of conducting activities in the forum state, thereby invoking the benefits of that state's legal protection.  See Hanson v. Denckla, 357 U.S. 235, 253 (1958).  More recently, the Supreme Court has held that a court may have specific jurisdiction over a defendant when the intended effects of the defendant's conduct were not only directed at the forum state, but also meant to cause harm to it.  See Calder v. Jones, 465 U.S. 783, 789-790 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims when defendant's Florida conduct had "effects" in forum state of California).  Thus, district courts in the Ninth Circuit apply different specific jurisdiction tests for contracts and tort cases.  See Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991).

There are three elements to the specific jurisdiction test as it applies to tort cases such as this one[4]: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant could have anticipated would be suffered in the forum state. Ziegler v. Indian River County,  64 F.3d 470, 474 (9th Cir. 1995).   Furthermore, some courts have found that corporations who direct their advertising via the Internet, and have toll-free numbers available to call on their websites, are subject to jurisdiction in the forum state.  See Id. (citing Inset Systems Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (D. Conn. 1996) (holding that defendant purposely availed itself of conducting business in Connecticut due to its advertising activities via the Internet and its toll-free number directed at Connecticut and all other states)).

Here, Defendant's actions satisfy the criteria for purposeful availment in a tort action.

---

[4] Trademark infringement actions, such as this one, sound in tort.  See Am. Isuzu Motors, Inc. v. Fladeboe Volkswagon, Inc., 250 Fed. Appx. 204, 205 (9th Cir. 2007).

First, Defendant intentionally sold products to Arizona customers that allegedly bear Plaintiff's protected VORTEX trademark. Defendant's website was accessible to – and indeed, accessed by – customers in Arizona, who placed at least 40 orders for allegedly infringing products. This, combined with Defendant's magazine advertisements, should have put Defendant on notice that it might be subject to suit in Arizona, especially after receiving a cease and desist letter from Plaintiff, an Arizona-based company. Indeed, Defendant could have reasonably expected to be subject to suit in all states in which citizens would have access to its website and magazine advertisements, and where the effects of any online trademark infringement could be felt. Therefore, because Defendant has knowingly engaged in actions aimed at Arizona, with the knowledge that such actions might subject it to suit in Arizona, Defendant has purposely availed itself of the privilege of conducting business here, and has invoked the benefits and protections of Arizona's laws. See Hanson, 357 U.S. at 253.

### b. Action Arose Through Contacts

Notwithstanding purposeful availment, "a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction." Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990). An action arises out of certain contacts if, "but for" the contacts between the defendant and the forum state, the action would not exist. Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995).

In Cybersell, Inc., the Court stated:

> Cybersell AZ points to several district court decisions which it contends have held that the mere advertisement or solicitation for sale of goods and services on the Internet gives rise to specific jurisdiction in the plaintiff's forum. However, so far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state.

Cybersell, Inc., 130 F.3d at 419. Every court that has subjected an advertiser to suit in the forum state has determined that the advertiser did something "more" than just simply advertise. Id. Similarly, in Calder v. Jones, the court noted that "[t]he plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction...but they may be so manifold as to

1   permit jurisdiction when it would not exist in their absence." <u>Calder</u>, 465 U.S. at 788.  Courts
2   have also considered the number of "hits" received on a particular website.  <u>See</u> <u>Cybersell,</u>
3   <u>Inc.</u>, 130 F.3d at 419.

4          Here, Defendant operates an interactive website[5] complete with a telephone and fax
5   number listed on the home page.  Sales made from that website are the "but for" cause of
6   Plaintiff's action.  That is, "but for" Defendant's directing its advertisements and phone
7   number to Arizona (among other states) and consummating sales with Arizona residents,
8   Plaintiff would have no valid action.  Therefore, Plaintiff's action arose out of Defendant's
9   Arizona contacts.

10                        **c. Reasonableness of Jurisdiction**

11          Finally, having determined that the first two requirements of the specific jurisdiction
12   test have been met – purposeful availment and the action arises out of Defendant's contacts
13   –  the Court concludes that the exercise of jurisdiction is reasonable.  Thus, the burden of
14   proof is on Defendant to "present a compelling case that the presence of some other
15   considerations would render jurisdiction unreasonable."  <u>Burger King</u>, 471 U.S. at 477.
16   Specifically, Defendant must show a due process violation, and prove that jurisdiction in the
17   forum state would be gravely difficult and inconvenient, thus placing it at a severe
18   disadvantage as compared to Plaintiff.  <u>See</u> <u>WebZero, LLC v. ClicVu, Inc.</u>, 2008 U.S. Dist.
19   LEXIS 33124 at *6 (C.D. Cal. 2008) (citing <u>Sher v. Johnson</u>, 911 F.2d 1357, 1365 (9th Cir.
20   1990)).  Reasonableness requires consideration of six factors: (1) the extent of the defendant's
21   purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum;
22   (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's
23   interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
24   controversy; (6) the importance of the forum to the plaintiff's interest in convenient and
25   effective relief; and (7) the existence of an alternative forum.  <u>Ziegler</u>, 64 F.3d at 475.

26

27 _____

28          [5] An interactive website is one in which users can exchange information with the host
     computer.  <u>Cybersell, Inc.</u>, 130 F.3d at 418.

1    In addition, some courts have differentiated between "passive" and "interactive"

2    websites when discussing the issue of reasonable jurisdiction. In Pebble Beach Co. v. Caddy,

3    the Court found that because the defendant's website did not allow customers to make

4    reservations online, thus rendering it a "passive" website, the plaintiffs could not subject the

5    defendant to personal jurisdiction in California or even the United States. Pebble Beach Co.

6    v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (finding no personal jurisdiction where

7    California plaintiff sued British defendant over trademark infringement due to similarity

8    between names of defendant's bed-and-breakfast and plaintiff's golf resort). In Stomp, Inc.

9    v. Neato, however, the defendant was a company that was consummating sales over the

10   Internet, thus subjecting it to litigation in any state (in this case, specifically California) in

11   which sales were made. See Stomp, Inc. v. Neato, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999)

12   (finding personal jurisdiction where California plaintiff brought suit against Connecticut

13   defendant for alleged patent infringement arising out of defendant's online sales). Similarly,

14   in WebZero, the Court found that the defendant, as the operator of an "interactive" website,

15   was subject to personal jurisdiction in California due to its business contacts with the state.

16   See WebZero, LLC, 2008 U.S. Dist. 33124 at *24 (finding personal jurisdiction where

17   Wyoming plaintiff brought suit against Delaware defendant alleging patent infringement

18   arising out of defendant's online transactions). Finally, in A. Uberti & C. v. Leonardo, the

19   Supreme Court of Arizona held that due to the defendant's nationally distributed

20   advertisements, catalogs, and sales of goods in Arizona, personal jurisdiction in Arizona was

21   reasonable because the foreign defendant's acts were aimed at Arizona, as at all other states.

22   See A. Uberti & C. v. Leonardo, 181 Ariz. 565, 574 (Ariz. 1995) (holding that Italian firearm

23   manufacturer was subject to personal jurisdiction in Arizona).

24   While Defendant contends that all of its orders are sold under a contract binding under

25   Virginia law, this stipulation applies solely to Defendant's customers, and alleged trademark

26   infringement does not fall under the same category as sales. Therefore, when considering

27   reasonable jurisdiction, the first factor to consider is that of purposeful interjection: "Even if

28   there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the

degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).   Here, Defendant maintained an interactive website and consummated over 100 sales with Arizona customers.   Therefore, Defendant's interjection was substantial.   Another factor to consider is Defendant's burden in litigating; that is, the burden should be so great as to constitute a violation of due process.  See Id.  In this case, it is not gravely difficult or inconvenient for Defendant to litigate in Arizona.  See Webzero, LLC, 2008 U.S. Dist. LEXIS 33124 at *6 (C.D. Cal. 2008) (finding that, as a business entity that had operated for over six years, and given fax machines and discount air fares, requiring defendant to defend itself in California as opposed to Wyoming was not a violation of due process). The third principal aspect to consider is efficient resolution.  According to the Court in Panavision, this factor considers the location of witnesses and evidence, yet given modern advances in communication, is no given significant weight.  Panavision Intern, L.P., 141 F.3d at 1323.   In this case, at least some key witnesses are located in Arizona.   Finally, the alternative forum of Virginia must be considered.   While it may be more costly and inconvenient for Defendant to litigate in Arizona (See Panavision Intern, L.P., 141 F.3d at 1324), Defendant has not presented any compelling reason as to why the exercise of jurisdiction over it in Arizona would be unreasonable.  Indeed, Defendant's local counsel appears competent and well-equipped to represent its interests here.  Therefore, because due process is not violated by exercising personal jurisdiction over Defendant, jurisdiction in Arizona is proper.

**III.   Venue**

Pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, a complaint against a defendant may be dismissed for improper venue.  See Fed. R. Civ. P. 12(b)(3).  In deciding a Rule 12(b)(3) motion, the Court must draw all reasonable inferences and resolve every factual dispute in favor of Plaintiff.  See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004).

1    When considering the issue of venue in this case, the Court must look to both 28

2    U.S.C. § 1391(b)(2) and § 1391(c).  Pursuant to 28 U.S.C. § 1391(b)(2), a civil action that is

3    not solely founded on diversity can only be brought in a judicial district in which a substantial

4    amount of the events giving rise to the claim occurred.  See 28 U.S.C. § 1391(b)(2).  As

5    discussed, Defendant sold a substantial number of allegedly infringing products to Arizona

6    customers.  In addition, 28 U.S.C. § 1391(c) states that a defendant corporation is deemed to

7    reside in any judicial district in which it is subject to personal jurisdiction.  See 28 U.S.C. §

8    1391(c).  Because Defendant is subject to personal jurisdiction in Arizona, as discussed

9    above, venue in the District of Arizona is proper.

10    Accordingly,

11    **IT IS ORDERED** denying Defendant's Motion to Dismiss (Dkt. 5).

12    DATED this 24th day of June, 2008.

13

14

15

16

17

18

19
                                    _____
20
                                            Earl H. Carroll
21                                     United States District Judge

22

23

24

25

26

27

28